JOHN G. PAYTON AND WIFE v. JOHN A. CAPLEN AND WIFE.

Decided November 22, 1900.

1.  Evidence—Identity of Land.

Where a witness who had resided for many years on the land in controversy testifies that it is included in and is a part of a larger survey, his evidence is not destroyed by reason of a statement on cross-examination that he did not know the corners of the larger survey.

2.  Same.

See the opinion for evidence held sufficient to show that the land in controversy was included in a larger survey previously conveyed by plaintiff's grantor to the ancestor of defendant.

3.  Constructive Possession—Conflicting Deeds from Same Grantor—Innocent Purchaser—Limitation.

H. conveyed 200 acres of land to defendant, and then, before the record of that deed, conveyed a 20 acres tract of the same land to plaintiff who had no notice of the prior conveyance, and who did not at any time take actual possession. After such conveyance to plaintiff, defendant recorded his deed and settled on the land, but did not take actual possession of the 20 acres tract until thirteen years later. Held that plaintiff, having acquired the superior title by her purchase without notice, had thereby the constructive possession of the 20 acres tract, and that limitations ran against her only from the date when plaintiff took actual possession of the part in controversy.

APPEAL from Galveston. Tried below before E. D. CAVIN.

*Joseph & Joseph,* for appellants.

*Maco & Clegg Stewart,* for appellee.

GARRETT, CHIEF JUSTICE.—This was an action of trespass to try title brought by Nancy J. Caplen, joined by her husband, John A. Caplen, against Mollie Payton and her husband, John G. Payton, for the recovery of 20 acres of land situated in Galveston County, on Bolivar Peninsula, known as Coates Island, and being a part of the Dunman league. The defendants pleaded not guilty and the statute of three, five, and ten years limitation. The cause was tried below by the court without a jury, and resulted in a judgment in favor of the plaintiff for the recovery of the land. No conclusions of fact and law were filed by the trial judge. Elizabeth Hampshire was common source of title. She executed a deed for a valuable consideration to Louisa E. Caplen, a feme sole, on October 13, 1876, for the property in controversy, which was filed for record in the record of deeds for Galveston County, December 20, 1876. On September 26, 1883, Louisa E. Caplen conveyed the land to the plaintiff, Nancy J. Caplen, by a deed duly executed and filed for record. Said Nancy J. Caplen was then and has ever since been a married woman. The land was conveyed to her in her separate right and all taxes thereon have been paid by her and the said Louisa E. Caplen since the conveyance to the latter by Elizabeth Hampshire. No actual possession was ever taken or had of this land by either the plaintiff or her vendor.

On September 21, 1876, the said Elizabeth Hampshire conveyed to "Louisa A. Cronea, the wife of Charles Cronea, he consenting thereto," 200 acres of land on Bolivar Peninsula, composed of two tracts adjoining each other, known as the "Reeves place." This deed was filed for record in the record of deeds for Galveston County, October 27, 1876. Charles Cronea and his wife, Louisa A. Cronea, went upon the land conveyed to the wife by Elizabeth Hampshire in the year 1877, and occupied the house that was upon it and used and cultivated the land, which remained continuously in the possession of said Cronea and wife and their children and heirs until the time of the trial. Louisa Cronea died in 1879. The defendant Mollie Payton is her daughter and one of her heirs. Charles Cronea died in 1894, but in 1890 he turned the land over to the children and they divided it among themselves. No actual possession was ever taken by Louisa or Charles Cronea or their children or heirs of the 20 acres in controversy until 1890, when the defendants went into possession thereof and have resided upon, used and occupied it ever since. All taxes were paid on the 200 acres by the Croneas. The 20 acres in controversy, known as Coates Island, is a part of the 200 acres known as the Reeves place.

It will be seen from the above statement of the evidence that when Elizabeth Hampshire conveyed the 20 acres in controversy to Louisa Caplen, she had already conveyed the same to Louisa Cronea as a part of the Reeves place.

Appellee contends that there is no evidence that Coates Island was a part of the Reeves place. Payton testified that Coates Island was in the Reeves survey. On cross-examination he said that he did not know of his own knowledge anything about where the lines or corners of the Reeves survey or of the Martin Dunman survey, of which it was a part, were located on the ground, and had never heard Charles Cronea or his wife claim Coates Island. This may be true, and yet the witness might be able to say from a residence of many years on the tract of land, eleven years on that in controversy, that Coates Island was a part of the larger tract of 200 acres. We do not think the statement on cross-examination destroys his evidence that Coates Island was a part of the Reeves survey. William Duebner also testified that Coates Island was a part of the Reeves survey, and that Louisa Cronea and Charles Cronea always claimed that Coates Island was in the 200 acres they bought from Elizabeth Hampshire. It is sought to discredit his evidence by his statement that the place where Charles Cronea and his wife lived and which they cultivated and used was a considerable distance from Coates Island,—more than a mile; but a reference to the field notes will show that the tract was a narrow tract considerably more than a mile long. The evidence is not only sufficient to show that Coates Island is a part of the Reeves survey, but it is undisputed. An examination of the field notes of the deed from Elizabeth Hampshire to Louisa Cronea, supplying two missing calls in the tract of 147.8 acres, which is shown by the evidence to be all of survey No. 1, which may easily be done, shows that the 200 acres fronts 431¼ varas on the Gulf and runs back 2617½

varas. The 52.2-acre tract is shown to be a part of survey No. 2. The first call of the field notes of the 20 acres in controversy is for a line running N. 49 deg. E. 337 varas to a stake on line of Nos. 1 and 2; the remaining calls coincide with the calls of No. 1 and are consistent with the evidence that the 20 acres is a part of survey No. 1. The call for a corner on the line between the surveys is very strong evidence of the fact; as also the fact that the north line of the 20 acres and of survey No. 1 are of the same length and call for the same course. We gather from the record that the survey numbers used in the evidence are of surveys in a partition or subdivision of the Dunman league; and there is no evidence in the record that Elizabeth Hampshire ever owned more land in the Dunman survey than the 200 acres conveyed by her to Louisa Cronea.

But when Louisa Caplen bought the 20 acres of land in controversy from Elizabeth Hampshire without notice of the prior unrecorded deed to Louisa Cronea, she took constructive possession thereof, the effect of the conveyance being to vest her with the full legal title as an innocent purchaser and to oust Louisa and Charles Cronea of the constructive possession had thereof by virtue of their actual possession of another portion of the 200 acres of which it was a part, the effect of their deed when executed and settlement upon the land being to give them constructive possession to the boundaries defined in the deed beyond the portion actually occupied by them. There being no actual possession of the 20 acres by the Croneas, their possession of the portion of the 200 acres occupied by them did not extend by construction or otherwise to the smaller tract conveyed to Louisa Caplen. Turner v. Moore, 81 Texas, 206; Cook v. Lister, 15 Texas Civ. App., 31. The rule is thus stated by the late Justice Pleasants in Cook v. Lister: "When one having a conveyance for land enters thereon he has ordinarily constructive possession of all the land included within the boundaries given in the deed of conveyance. But this rule does not obtain against the owner of a senior grant of land where there is a partial conflict between such grant and a junior grant, unless the possession of the junior grantee extends to that part of the grant which lies within the boundaries of the older grant." No possession by the Croneas of the 20 acres in controversy having been shown before 1890, and the plaintiff Nancy J. Caplen being under coverture at that time, limitation has not become complete against her since the passage of the Act of April 1, 1895, amending article 3201 of the Revised Statutes of 1879. Gen. Laws 1895, p. 35; Rev. Stats. 1895, art. 3352.

There was no error in overruling the motion for a new trial. Since no other judgment could have been rendered on the facts than was rendered, the alleged errors assigned by the appellants are immaterial. The judgment of the court below will be affirmed.

*Affirmed.*